**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:13-CV-118-GCM-DCK**

| | |
|---|---|
| JEFFREY LEE CRABB, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   **MEMORANDUM AND** |
| | )   **RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 7) and "Defendant's Motion For Summary Judgment" (Document No. 9). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>denied</u>; and that the Commissioner's decision be <u>vacated</u>.

### I.     BACKGROUND

Plaintiff Jeffrey Lee Crabb ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On March 23, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq*.,

---

[1] Carolyn W. Colvin is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.

alleging an inability to work due to a disabling condition beginning October 1, 2009. (Transcript of the Record of Proceedings ("Tr.") 11)). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about June 23, 2010, and again after reconsideration on or about October 18, 2010. (Tr. 11, 62-65, 71-72). In its "Notice of Reconsideration" the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. Though you would be unable to meet the functional demands of your past job as a knitting machine operator as you have described it, other information shows that you retain the functional capacity to meet the functional demands of this job as it is generally performed. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 71).

Plaintiff filed a timely written request for a hearing on November 15, 2010. (Tr. 11, 73-74). On February 22, 2012, Plaintiff appeared and testified at a hearing before Administrative Law Judge Daniel J. Stein ("ALJ"). (Tr. 11-17, 21-42). In addition, Timothy D. Welborn, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on April 30, 2012, denying Plaintiff's claim. (Tr. 8-17). Plaintiff filed a request for review of the ALJ's decision on June 28, 2012, which was denied by the Appeals Council on July 24, 2013. (Tr. 1-3, 7). The April 30, 2012 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 16, 2013. (Document No. 1). On August 23, 2013, the undersigned was assigned to this case as the referral magistrate judge. Plaintiff's "Motion For Summary

2

Judgment" (Document No. 7) and "Memorandum In Support Of Motion For Summary Judgment" (Document No. 8), were filed December 23, 2013; and "Defendant's Motion For Summary Judgment" (Document No. 9) and "Defendant's Memorandum Of Law In Support Of Motion For Summary Judgment" (Document No. 10), were filed February 20, 2014. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing

disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between October 1, 2009, and the date of his decision.[2] (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

>     (4)     whether claimant has the residual functional capacity
>             ("RFC") to perform her/his past relevant work - if yes, not
>             disabled; and
>
>     (5)     whether considering claimant's RFC, age, education, and
>             work experience he/she can make an adjustment to other
>             work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 16-17).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since October 1, 2009, his alleged disability onset date. (Tr. 13). At the second step, the ALJ found that scoliosis of the spine and asthma, were severe impairments. Id.[3] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 14).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

> the claimant is only able to occasionally balance, stoop, crawl,
> kneel, and crouch and is only able to occasionally climb ramps,
> stairs, ladders, ropes, or scaffolds. In addition, the claimant must
> avoid concentrated exposure to fumes, odors, dusts, gases, and
> poor ventilation.

(Tr. 14). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

96-4p and 96-7p." Id.  The ALJ further opined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment that is justified in this case." (Tr. 16).

At the fourth step, the ALJ found that Plaintiff could perform his past relevant work as a knitting-machine operator. (Tr. 16). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between October 1, 2009, and the date of his decision, April 30, 2012. (Tr. 16-17).

Plaintiff on appeal to this Court assigns error to: (1) the ALJ's representation of claimant's testimony; (2) the ALJ's evaluation of Plaintiff's ability to perform his past relevant work; and (3) the weight given, if any, to the statement of Plaintiff's treating physician, Dr. Watson. (Document No. 8, pp. 6-7). The undersigned will discuss these contentions in turn.

**A.    Plaintiff's Credibility**

In his first assignment of error, Plaintiff argues that the ALJ "did not consider all of the evidence appropriately and ignored or misrepresented evidence which was contrary to his final opinion." (Document No. 8, p. 8). Plaintiff notes that the ALJ found "inconsistencies in the record that also tend to detract from the claimant's overall credibility." (Document No. 8, p.7) (citing Tr. 15). For example, the ALJ stated that Plaintiff testified "that he volunteered to be laid off from his job in October of 2009, because 'he was going to be fired,**' rather than due to his conditions worsening**." (Tr. 15) (emphasis added).

Plaintiff argues that the ALJ's credibility determination must be "supported by the evidence in the case record." (Document No. 8, p.7) (citing SSR 96-7p). Plaintiff contends that the ALJ misrepresents the claimant's testimony, thus relying on something other than the

6

evidence in the case record for his finding." (Document No. 8, p.7). The hearing transcript suggests that Plaintiff did expect to be fired, but his testimony also indicates that Plaintiff expected to be fired because his condition was worsening and he could not perform his job. (Tr. 26).

> No, I volunteered to be laid off permanently because my back got to spasming, I couldn't walk up and down the floor, and I was having to lay out all the time. And I was going to get fired if I didn't do something. They let me go.

Id. Plaintiff testimony also included the following excerpts:

> Q. Well, by October of 2009, what difficulties were you having?
>
> A. On the cement floor, my back was spasming.
>
> Q. When you say having spasms, what do you mean?
>
> A. Cramps up my back, and I'd have to bend over. And I couldn't stand. And if I sit down, it made it worse. I need to lay down is what I needed to do, but I couldn't do that at work.

(Tr. 31). Plaintiff further testified that he suffered spasms at least every other hour, that he missed at least a day of work every two weeks and that his pain medication caused him to fall asleep at work. Id.

Plaintiff argues that

> [i]t is clear from Mr. Crabb's testimony that his employment ended as a result of his worsening medical condition, which is in direct contradiction to what the ALJ wrote in the decision. The ALJ's finding that the claimant's medical conditions were not the reason for leaving his employment is not an accurate reflection of the evidence in this case.

(Document No. 8, p.8). Plaintiff concludes that the ALJ's finding on his credibility is not supported by the facts, and is therefore, an error that prejudices his claim. Id.

7

Defendant argues that substantial evidence supports the ALJ's credibility determination. And that "the ALJ found that the medical record did not support Plaintiff's allegations of disabling symptoms." (Document No. 10, p.4) (citing Tr. 15).

Specifically regarding Plaintiff's back pain, Defendant notes that

> on April 1, 2009, although MRIs of Plaintiff's spine identified scoliosis in his left cervicothoracic and right thoracic spine, there was no evidence of spinal stenosis. (Tr. 211). In addition, the thoracic vertebrae were otherwise intact, in good alignment, and had a normal marrow signal (Tr. 212). On August 25, 2009, a physical exam was unremarkable (Tr. 215). Plaintiff repeatedly reported that he was doing well (Tr. 187, 249, 250, 252, 254, 256, 258, 260, 263, 270, 273, 275, 277, 280, 283, 286), and that his medication controlled his pain (Tr. 193, 250 256, 260, 273, 283).

(Document No. 10, p.4).

Regarding Plaintiff's asthma, Defendant notes that

> although he once reported asthma issues to his treating physician, Jerome T. Watson, M.D. (Tr. 286), he repeatedly did not report any issues with respect to his asthma (Tr. 250, 252, 254, 256, 258, 260, 265, 267, 270, 273, 280, 283, 288, 290). At the hearing, Plaintiff took the position that his asthma alone did not prevent him from working (Tr. 25-26).

Id. Defendant also argues that the consultative examination, Plaintiff's activity level, evidence that Plaintiff worked during the relevant period, and the non-examining medical consultant's review, all support the ALJ's credibility determination. (Document No. 10, pp.4-6).

Finally, Defendant notes that the ALJ found that Plaintiff volunteered to be laid off because he was going to be fired, and that "[s]topping work for reasons other than impairment undermines a claimant's credibility." (Document No. 10, p.6) (citing Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970)). Defendant concludes that even if the Court accepts Plaintiff's argument that the ALJ was mistaken with respect to the reason Plaintiff ceased his employment, remand is inappropriate because there is still substantial evidence to support the ALJ's credibility

determination. Id. Defendant suggests that any error in the ALJ's credibility determination was harmless because Plaintiff was not prejudiced. Id.

The undersigned is not persuaded that the ALJ's mistake was harmless. Although Defendant may ultimately be correct that substantial evidence will support a finding that Plaintiff is less than fully credible, the undersigned is unwilling to recommend that the ALJ's mistake here was harmless. Rather, the ALJ's mistaken interpretation of the Plaintiff's testimony appears to have been central to his credibility determination. (Tr. 15). For this reason, along with additional reasoning to be discussed below, the undersigned will recommend that this matter be remanded for further consideration and clarification.

**B.     The Step Four Analysis**

Next, Plaintiff notes that "[b]ased on the evidence of record and the hearing testimony, the ALJ found that Mr. Crabb has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), except that he can only occasionally balance, stoop, crawl, kneel, and crouch, and only occasionally able to climb ramps, stairs, ladders, ropes, or scaffold, and must avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation." (Document No. 8, p. 9) (citing Tr. 14). Plaintiff further notes that the ALJ concluded that "claimant is capable of performing past relevant work as a knitting machine operator. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity." Id.

Plaintiff asserts that "SSR 82-62 requires the ALJ to make 'A finding of fact as to the physical and mental demands of the past job/occupation.'" Id. Plaintiff then argues that the ALJ failed to specify the job listing from the Dictionary of Occupational Titles ("DOT") which most closely matched Plaintiff's past work. (Document No. 8, pp.9-10). Plaintiff notes that the DOT lists six (6) separate occupations which include in their title "knitting machine operator," and that some of

9

those jobs are generally performed at a light exertional level and others are performed at a medium exertional level. (Document No. 8, pp. 9-10).

Plaintiff also observes that "the ALJ did not elicit the testimony of a vocational expert to assist in assessing the claimant's ability to perform work." (Document No. 8, p.10). The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which a particular claimant can perform. (Document No. 8, pp.10-11) (citing Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). Plaintiff concludes that "[n]o evidence exists in the record on which the Commissioner may rely to determine what effect the claimant's limitations have on his ability to perform his past work," and "[t]herefore, there are insufficient findings to support the ALJ's finding that there are jobs in the economy that the claimant can perform." (Document No. 8, p. 11).

In response, Defendant argues that the record "demonstrates that the ALJ relied on the Dictionary Of Occupational Titles ("DOT"), and determined that Plaintiff could perform his past relevant work as a knitting-machine operator (Tr. 16-17)." (Document No. 10, p.7). "As such," Defendant concludes that "substantial evidence supports the ALJ's decision, and this Court should affirm it." Id.

The undersigned has reviewed the ALJ's decision, with particular focus on the transcript pages cited by Defendant. Contrary to Defendant's argument that the ALJ relied on the DOT, the undersigned finds no reference by the ALJ to the DOT at Tr. 16-17, or other citations to the record. Moreover, the ALJ does not include any discussion regarding how Plaintiff's RFC impacts his ability to perform his past relevant work either as he performed it, or as it is generally performed.

Defendant later acknowledges that "the ALJ could have certainly been clearer by directly citing the DOT in his decision," but "the record demonstrates that the ALJ was referring to the

10

position of knitting-machine operator as defined in DOT # 685.685-010." (Document No. 10, pp.8-9). Defendant then concludes that any error at step four in this ALJ's decision is harmless. (Document No. 10, pp.9-10).

Although the ALJ's and Defendant's conclusions at step four may be correct, the undersigned is not persuaded that the ALJ has shown that substantial evidence supports such a conclusion. Especially coupled with the ALJ's previous allegedly "harmless" error, the undersigned is unwilling to recommend that the decision of the Commissioner be affirmed.

Under these circumstances, the undersigned will decline to review Plaintiff's alleged third error by the ALJ. Rather, the undersigned finds sufficient cause to recommend that this matter be remanded for a new hearing. At a new hearing, the ALJ might consider whether the assistance of a Vocational Expert would be helpful, as well as additional analysis at step five of the sequential evaluation.

## IV. CONCLUSION

The undersigned is not convinced in this case that "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be vacated.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 7) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 9) be **DENIED**; and the Commissioner's determination be **VACATED** and this matter **REMANDED** for a new hearing and further consideration.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: March 18, 2014

David C. Keesler
United States Magistrate Judge